IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KIRAN RAMESH GADHAVE, § <br> § <br> Plaintiff, § <br> § <br> § Civil Action No. 3:21-CV-2938-D <br> VS. § <br> § <br> KIRT THOMPSON, in his official § <br> capacity as Director, U.S. Citizenship § <br> and Immigration Services, § <br> Texas Service Center, et al., § <br> § <br> Defendants. § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Kiran Ramesh Gadhave ("Dr. Gadhave") seeks judicial review of the denial by U.S. Citizenship and Immigration Services ("USCIS") of his Form I-140 Immigrant Petition for Alien Workers as an alien of "extraordinary ability." On cross-motions for summary judgment, the court grants defendants' motion, denies plaintiff's motion, and enters judgment dismissing this action with prejudice.[1]

I

Dr. Gadhave, a citizen of India, is an Assistant Professor in the Department of Entomology at Texas A&M University who purports to be "a leader in the fields of entomology and microbial biology." R. (ECF No. 25) at 297. In 2021 Dr. Gadhave filed

---

[1] Defendants point out in their cross-motion that Mary Elizabeth Brennan Seng is now serving as Acting Director of the Texas Service Center and has been automatically substituted for defendant Kirt Thompson under Fed. R. Civ. P. 25(d).

with USCIS a Form I-140 Immigrant Petition for Alien Workers ("Petition"), asserting entitlement to preferential treatment in visa issuance as an alien of "extraordinary ability."

USCIS issued a Request for Evidence ("RFE") seeking additional documentation to support the Petition, with which Dr. Gadhave complied, and then denied the Petition. After the denial, Dr. Gadhave sought judicial review of USCIS's decision in this court. USCIS later reopened proceedings on the Petition. After further RFEs, to which Dr. Gadhave responded, USCIS again denied the Petition.

Dr. Gadhave seeks judicial review of the denial of his Petition[2] and moves for summary judgment. Defendants have filed a cross-motion for summary judgment. The court has heard oral argument on the motions.

II

The general "genuine dispute of material fact" standard for summary judgment does not apply to claims under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. *San Joaquin River Grp. Auth. v. Nat'l Marine Fisheries Serv.*, 819 F.Supp.2d 1077, 1084 (E.D. Cal. 2011). Instead, "when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Redeemed Christian Church of God v. USCIS*, 331 F.Supp.3d 684, 694 (S.D. Tex. 2018) (Rosenthal, C.J.) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). In this context, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is

---

[2]In his amended complaint, Dr. Gadhave seeks declaratory judgment, injunctive relief, and judicial review.

supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* (quoting *Stuttering Found. of Am. v. Springer*, 498 F.Supp.2d 203, 207 (D.D.C. 2007)).

Under the APA, an agency decision may be reversed by the district court only if the plaintiff shows that the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989). An agency acts arbitrarily and capriciously if it

> has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Brown v. Napolitano*, 391 Fed. Appx. 346, 349 (5th Cir. 2010) (per curiam). "A decision is not arbitrary or capricious if the agency considers the relevant factors and 'articulates a rational relationship between the facts found and the choice made.'" *Willingham v. Dep't of Labor*, 475 F.Supp.2d 607, 612 (N.D. Tex. 2007) (Robinson, J.) (quoting *State of La. ex rel. Guste v. Verity*, 853 F.2d 322, 327 (5th Cir. 1988)). The agency need not "expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner." *Wang v. Bd. of Immigr. Appeals*, 437 F.3d 270, 275 (2d Cir. 2006) (internal quotation marks omitted) (citation omitted).

Although the district court must ensure that the agency engaged in "reasoned

decisionmaking," the agency is "entitled to considerable deference in its interpretation of the governing statute." *Pasquarell*, 889 F.2d at 1475 (citations omitted). "A reviewing court is not to substitute its judgment for that of the agency, and the court is to show proper deference to agency expertise." *Chi-Feng Chang v. Thornburgh*, 719 F. Supp. 532, 535 (N.D. Tex. 1989) (Fitzwater, J.). "Even if statutory or regulatory language is ambiguous, deference is usually given to the agency's interpretation." *Defensor v. Meissner*, 201 F.3d 384, 386 (5th Cir. 2000).

III

The Immigration and Nationality Act ("INA") requires that USCIS give priority in employment-based visas to certain classes of people. *See* 8 U.S.C. § 1153(b). One such visa is the First Preference EB-1 visa, "colloquially dubbed the 'Einstein' or 'genius' visa." *Amin v. Mayorkas*, 24 F.4th 383, 386-87 (5th Cir. 2022). An EB-1 visa is granted only when

> (i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics, which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation; (ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability; and (iii) the alien's entry into the United States will substantially benefit prospectively the United States.

8 U.S.C. § 1153(b)(1)(A).

The INA's enabling regulation defines "extraordinary ability" as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2). "This narrow definition reflects the

stringency of the 'extraordinary ability' standard.  After all, a different visa is available to those whose ability is merely 'exceptional.'" *Amin*, 24 F.4th at 387 (quoting 8 U.S.C. § 1153(b)(2)).  As a result, even highly accomplished individuals often fail to win the "extraordinary ability" designation.  *See, e.g.*, *Kazarian v. USCIS*, 596 F.3d 1115, 1121-22 (9th Cir. 2010).  "A petition for an alien of extraordinary ability must be accompanied by evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise."  8 C.F.R. § 204.5(h)(3).  Sustained acclaim and recognition may be proved by evidence that the alien (1) received a one-time, major, international recognized award or (2) meets at least three of ten criteria that together constitute "extraordinary ability."  *Id.*[3]

USCIS's consideration of an EB-1 petition is a two-step process.  At the first step,

---

[3]The ten criteria are: (1) documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor; (2) documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields; (3) published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought; (4) evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought; (5) evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field; (6) evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media; (7) evidence of the display of the alien's work in the field at artistic exhibitions or showcases; (8) evidence that the alien has performed in a leading or critical role for organization or establishments that have a distinguished reputation; (9) evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or (10) evidence of commercial success in the performing arts, as shown by box office receipts, cassette, compact disk, or video sales.  8 C.F.R. § 204.5(h)(3).

"the agency assesses whether the applicant submitted the required 'initial evidence' listed in the regulation by a preponderance of the evidence." *Amin*, 24 F.4th at 388 (citing U.S. CITIZENSHIP & IMMIGR. SERVS., PM-602-0005.1, EVALUATION OF EVIDENCE SUBMITTED WITH CERTAIN FORM I-140 PETITIONS; REVISIONS TO THE *ADJUDICATOR'S FIELD MANUAL (AFM)* CHAPTER 22, *AFM* UPDATE AD11-14 (2010), at 5). "The 'preponderance of the evidence' standard requires that the evidence demonstrate that the applicant's claim is 'probably true.'" *Matter of Chawathe*, 25 I.&N. Dec. 369, 376 (USCIS AAO 2010). In evaluating the evidence, "[t]ruth is to be determined not by the quantity of evidence but by its quality." *Matter of E–M–*, 20 I.&N. Dec. 77, 79-80 (BIA 1989). Thus USCIS "must examine each piece of evidence for relevance, probative value, and credibility, both individually and within the context of the totality of the evidence." *Matter of Chawathe*, 25 I.&N. at 376. If USCIS can articulate a material doubt as to the truth, denial of the petition is appropriate. *Id.*

Even if USCIS determines that the applicant's evidence meets at least three criteria under the first step, the inquiry is not at an end, because "[t]he regulation does not say that meeting the regulatory criteria presumptively qualifies an applicant for a visa." *Amin*, 24 F.4th at 388. Rather, USCIS proceeds to the inquiry's second step, conducting "a 'final merits determination' to determine whether, as a whole, the evidence is sufficient to demonstrate that the applicant meets the 'required high level of expertise.'" *Id.* At this step, USCIS "consider[s] whether the record establishe[s] [the applicant's] sustained acclaim and status at the top of his field." *Id.* at 389.

IV

A

Dr. Gadhave alleges that he satisfies four of the ten criteria for "extraordinary ability" with appropriate documentation: (1) "[p]ublished material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought" (the "Publication Criterion"); (2) "[e]vidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought" (the "Judge Criterion"); (3) "[e]vidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field" (the "Contribution Criterion"); and (4) [e]vidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media" (the "Authorship Criterion"). 8 C.F.R. § 204.5(h)(3).  He asserts that, because he satisfies these statutory criteria, he is entitled to an EB-1 visa.

In its decision, USCIS acknowledged that Dr. Gadhave has satisfied two of these four criteria—the Judge Criterion and the Authorship Criterion—but maintained that the evidence Dr. Gadhave submitted is insufficient to establish that he has satisfied the Publication Criterion or the Contribution Criterion.  Because the decision concluded that Dr. Gadhave had not met at least three criteria, it declined to conduct a second-step final merits determination.  Dr. Gadhave contends that USCIS acted arbitrarily and capriciously in deciding the Publication Criterion and the Contribution Criterion, either by improperly

ignoring or discounting probative evidence he submitted or by unlawfully creating extra-regulatory, novel evidentiary requirements for his Petition, or both.

B

The court reviews USCIS's decision as to each of the two contested criteria in turn.

1

As noted above, the Publication Criterion requires the applicant to submit documentation of "[p]ublished material about [him] in professional or major trade publications or other major media, relating to [his] work in the field for which classification is sought." 8 C.F.R. § 204.5(h)(3)(iii). "The publication must focus on [his] work, must have significant national distribution, and must be in the predominant language of the country where it is published." *Denisov v. Wiemann*, 2006 WL 8437057, at *3 (N.D. Tex. Aug. 15, 2006) (Godbey, J.). "[T]he published material need not reference the [applicant] as 'a star,'" but it needs to be "specifically about the [applicant]" and focus on his personal work. *Kinuthia v. Rosenberg*, 2018 WL 1243955, at *5 (D. Mass. Mar. 8, 2018), *aff'd sub nom. Kinuthia v. Velarde*, 2019 WL 11671989 (1st Cir. July 3, 2019). It is not enough that the material merely "relate[s] to the [applicant]'s work" or that the applicant is pictured or mentioned in the publication. *Id.*

In support of this criterion, Dr. Gadhave submitted articles published in *Discover Magazine*, *The Economist*, *UC Riverside Newsletter*, and *Deutsche Welle*. USCIS found these articles to be insufficient to satisfy the criterion, stating that "[t]he submitted material only cites, quotes, references, or includes a photograph of the beneficiary. There is no

discussion of the beneficiary and the beneficiary's work. All articles appear to be about . . . the scientist who heads the beneficiary's research team." R. (ECF No. 25) at 3. USCIS also found that *UC Riverside Newsletter* is not a "major trade publication or major media." *Id.*

USCIS's decision as to the Publication Criterion was not arbitrary or capricious. For one, it does not appear to have "relied on factors which Congress did not intend [USCIS] to consider." *Brown*, 391 Fed. Appx. at 359. It explicitly listed the elements that Dr. Gadhave's submitted evidence must meet to satisfy the plain language of the criterion, including that it be both "about the beneficiary" and "relating to the beneficiary's work in the field." R. (ECF No. 25) at 3. It also clearly named the articles Dr. Gadhave submitted and stated why it found each insufficient. Additionally, the decision does not appear to run counter to Dr. Gadhave's proffered evidence. *See Brown*, 391 Fed. Appx. at 349. A review of the articles Dr. Gadhave submitted supports USCIS's determination that they are primarily about the scientists who headed Dr. Gadhave's research team and about the research of the team as a whole, not primarily about Dr. Gadhave or his individual work. The statement in several of the articles that Dr. Gadhave was a leader of his research team does not support Dr. Gadhave, because this criterion requires that the published material primarily focus on the applicant or his work, not that it provide substantive evidence of the applicant's exceptional stature or leadership on his team or in his field. Because the articles on which Dr. Gadhave relies do not primarily focus on him or his work, USCIS's first-step determination as to the Publication Criterion was neither arbitrary nor capricious.

2

The Contribution Criterion requires the applicant to provide "[e]vidence of [his] original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field." 8 C.F.R. § 204.5(h)(3)(v). "Courts have routinely affirmed agency decisions that held § 204.5(h)(3)(v) 'requires substantial influence beyond one's employers, clients, or customers.'" *Goncharov v. Allen*, 2022 WL 17327304, at *5 (N.D. Tex. Nov. 29, 2022) (Boyle, J.); *see also Amin*, 24 F.4th at 394; *Visinscaia v. Beers*, 4 F.Supp.3d 126, 134 (D.D.C. 2013); *Strategati, LLC v. Sessions*, 2019 WL 2330181, at *6 (S.D. Cal. May 31, 2019). For the applicant's contributions to be "of major significance," the evidence must demonstrate that his work has been widely adopted or replicated by industry actors unaffiliated with him. *See Amin*, 24 F.4th at 394. But general allegations that his work is "widely used" by industry actors are insufficient. *Id.* The evidence must include "specific information relating to the impact" of his work on the field as a whole. *Visinscaia*, 4 F.Supp.3d at 134.

Documentation that may be probative, but is not necessarily conclusive, of major significance includes "peer-reviewed articles in scholarly journals that have provoked widespread commentary or received notice from others working in the field, or entries (particularly a goodly number) in a citation index that cite the person's work as authoritative in the field." 6 U.S. CITIZENSHIP & IMMIGR. SERVS. POLICY MANUAL F.2 APPENDIX: EXTRAORDINARY ABILITY PETITIONS—FIRST STEP OF REVIEWING EVIDENCE (2022). Testimonial letters written on the applicant's behalf "that specifically articulate how the

person's contributions are of major significance to the field and their impact on subsequent work add value" in USCIS's adjudication process and are also considered probative. *Id.* "Letters that lack specifics and simply use hyperbolic language," however, "do not add value and are not considered to be probative evidence that may form the basis for meeting this criterion." *Id.*

In support of his Petition, Dr. Gadhave submitted a citation index, publication information, testimonial letters, and an explanation of his work. USCIS found that although the evidence demonstrated that Dr. Gadhave "provides valuable research" and "has made original contributions to the field," his work nonetheless has not "made a major significant impact in the field" such that it satisfies the Contribution Criterion. R. (ECF No. 25) at 4.

USCIS's decision on this criterion was not arbitrary or capricious. Again, the decision does not appear to have "relied on factors which Congress did not intend [USCIS] to consider." *Brown*, 391 Fed. Appx. at 349. The decision clearly named the types of documents Dr. Gadhave submitted and explicitly listed the elements necessary to satisfy the criterion's plain language. It also quoted from several of the individual submitted documents. While the decision did not specifically address every document that Dr. Gadhave submitted, there is no requirement that it have done so for the court to find that USCIS engaged in reasoned decisionmaking.

Additionally, USCIS's explanation for its decision does not clearly run counter to the evidence before it. *See id.* On the one hand, this court concludes that some of the documents could plausibly support a conclusion that Dr. Gadhave's contributions to his field are of

"major significance." Dr. Gadhave's citation record shows that his 23 published research papers have been cited 387 times to date, with some cited in "top," "esteemed" journals. R. (ECF No. 25) at 229, 231. The citation record also shows that he was the lead researcher on 13 of these papers, and that 3 of the 13 received several times more citations than average. The record additionally reflects that 84.6% of citations to his work are independent, as opposed to self-citations or citations by coauthors. All of these facts could potentially be probative of "major significance."

On the other hand, it could be said that the information Dr. Gadhave provided about his citations does not actually show that his research has been widely adopted or replicated. *See Amin*, 24 F.4th at 394. Any citation to an academic work could equally critique it or laud it. Because Dr. Gadhave does not provide the text of the articles that cite his work, USCIS could have had a "material doubt" as to whether his citation index shows that others in his field have actually adopted or replicated his work. *See Matter of Chawathe*, 25 I.&N. at 376. Additionally, the record contains little evidence that contextualizes the number of citations Dr. Gadhave's work has received. Although his submissions show that a few of his articles have received several times more citations than "average," the record does not indicate what Dr. Gadhave's number of citations is being compared to: all articles within his specific field? all articles written by researchers of his age or level of expertise? all scientific articles ever published? Because Dr. Gadhave does not specify this, USCIS could have further had a "material doubt" as to whether his claim met the preponderance of the evidence standard. *Id.*

The testimonial letters, viewed individually and as a whole, also suggest that Dr. Gadhave's work may not be quite as significant as the Contribution Criterion requires. For the most part, the letters contain general assertions that Dr. Gadhave's research is valuable in his field, but they do not specifically articulate *how* his contributions are of "*major significance*," such as by providing specific examples or quoting statistics that quantify his impact. They also contain mostly general, conclusory statements about the value of Dr. Gadhave's research to the U.S. agriculture industry, without explaining in detail specific ways in which his personal contributions have already been widely applied or replicated to serve the industry. Several of the letters do assert that Dr. Gadhave's work is being recognized and referenced by some individuals in his field who are unaffiliated with him. But they do not show that people *throughout* the field are adopting or replicating his contributions, such that he has the required "*substantial* influence beyond [his] employers, clients, or customers." *Goncharov*, 2022 WL 17327304, at *5 (emphasis added). The court cannot say, in the face of these letters, that USCIS acted arbitrarily or capriciously in concluding that Dr. Gadhave did not satisfy this criterion.

Ultimately, because there is some clear evidence that supported a finding that Dr. Gadhave's work is not of "major significance," USCIS's decision on this criterion is not "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Brown*, 391 Fed. Appx. at 933. Although some of Dr. Gadhave's evidence supports a contrary decision, because USCIS clearly considered the relevant factors for this criterion and articulated a rational relationship between the facts and its decision,

*Willingham*, 475 F.Supp.2d at 612, its decision is entitled to "considerable deference." *Pasquarell*, 889 F.2d at 1475.

* * *

For the reasons explained, the court grants defendants' cross-motion for summary judgment, denies plaintiff's motion for summary judgment, and enters judgment dismissing this action with prejudice.

**SO ORDERED**.

October 19, 2023.

SIDNEY A. FITZWATER
SENIOR JUDGE